UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cheryl L. Schultz,                                                    Civ. No. 15-3062 (PAM/FLN)

               Plaintiff,

v.                                                                    **MEMORANDUM AND ORDER**

3M Company, 3M Short Term
Disability Plan, and 3M Long
Term Disability Plan, a program
of the 3M Employees' Welfare
Benefits Association (Trust II)
Plan,

               Defendants.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, Defendant's Motion is granted and Plaintiff's Motion is denied.

**BACKGROUND**

Plaintiff Cheryl Schultz worked at Defendant 3M Company[1] for 18 years, most recently as an inventory analyst. On February 28, 2014, she stopped working because of back pain that had been exacerbated by a fall in January 2014, as well as mental-health issues. Schultz was also hospitalized from March 21 through March 24, 2014, for suicidal thoughts.[2] She applied for and received short-term disability ("STD") benefits from 3M's

---

[1] Also named as Defendants are 3M's Short- and Long-Term Disability Plans, as part of the 3M Employees' Welfare Benefits Association (Trust II) Plan. For ease of reference, the Court will refer to these Defendants collectively as "3M."

[2] Schultz had been hospitalized in October 2013 after a suicide attempt. She returned to

STD plan's claims administrator, Sedgwick Case Management Services, Inc. This was not the first time Schultz received STD benefits; the record shows that she received STD benefits 13 previous times in her 18-year employment.[3]

Sedgwick eventually extended Schultz's STD benefits to June 9, 2014. Schultz returned to work part-time on May 19, 2014, but again stopped working on June 2, 2014. Sedgwick denied her request to extend STD benefits further, and after exhausting her administrative appeals of that decision, this lawsuit followed. In the meantime, Schultz accepted a severance package from 3M effective July 3, 2014. She contends that she did not release any claims for post-employment benefits in her severance agreement with 3M. (R. at 1917.)

Schultz argues here that Sedgwick ignored the interplay of her physical and mental health and thus incorrectly determined that she was ineligible for STD benefits. She also asks the Court to determine that she is eligible for long-term disability ("LTD") benefits after the expiration of her STD benefits.

The STD plan defines disability as the inability "to perform the material duties of your regular and customary occupation at 3M, or any appropriate job offered by 3M, due to an illness, injury, pregnancy, or other medical condition." (R. at 41.) An individual seeking benefits is required to provide "Objective Medical Evidence" of his or her

---

work after this incident.

[3] Under the terms of the plan, Schultz was eligible for 26 weeks of STD benefits at 100% of her base pay. (R. at 43.) It is not clear whether Schultz's previous STD benefits depleted this 26-week period.

disability (R. at 41). The plan's definition of this term is at the heart of the parties' dispute here, with Schultz contending that 3M did not consistently apply the plan's requirements and 3M insisting that Schultz did not supply the required objective medical evidence. As the plan defines the term, such evidence is:

> the medical demonstration of anatomical, physiological, or psychological abnormalities manifested by signs or laboratory findings, apart from an employee's perception of his or her own mental or physical impairments. These signs are observed through medically acceptable clinical techniques such as medical history and physical examination. Laboratory findings are manifestations of anatomical, physiological, or psychological phenomena demonstrated by chemical, electrophysiological, roentgenological, or psychological tests.

(R. at 42.)

The LTD plan's definition of disability requires that a claimant have exhausted STD benefits, and that, after 18 months, the claimant is "unable to perform the material duties of any occupation or employment for which you are, or may become, reasonably qualified by training, education or experience; and [y]ou are unable to earn 70% or more of your [previous total compensation] . . . while working at any occupation or employment." (R. at 10.) As with the STD plan, the LTD plan requires a claimant to provide objective medical evidence of the disability. Eligibility for LTD benefits ends when the employee's employment "ends for any reason." (R. at 17.) LTD benefits equal 60% of the employee's total compensation, including base pay plus bonuses and the like, calculated at the time LTD benefits begin. (R. at 12.)

The parties describe Schultz's medical history in great detail, and the Court will not

3

repeat that history here. In brief, Schultz suffers from borderline personality disorder, major depressive disorder, anxiety, chemical dependency, fibromyalgia, chronic pain disorder, disc degeneration, morbid obesity, and degenerative arthritis in the carpometacarpal joint of both of her thumbs. The issue before the Court is whether Schultz was disabled within the meaning of the STD plan as of June 10, 2014, and whether she remained disabled thereafter.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., governs the disability insurance plan at issue here. Because 3M's STD plan gives

Sedgwick the discretionary authority over benefit determinations,[4] the Court reviews Sedgwick's decisions for an abuse of discretion. Carr v. Anheuser-Busch Cos., Inc., 495 F. App'x 757, 763 (8th Cir. 2012). Schultz argues that procedural irregularities, in particular her supervisor's multiple contacts with Sedgwick, mandate a less-deferential review. But the evidence to which she points does not raise "serious doubts" about Sedgwick's claims handling. See Seman v. FMC Corp. Retirement Plan, 334 F.3d 728, 733 (8th Cir. 2003) (applying de novo review where irregularities in insurer's decisionmaking raised "serious doubts about the result reached" by insurer). The appropriate standard of review here is abuse of discretion.

Review for an abuse of discretion considers "whether [the administrator's] interpretation of the plan was reasonable, and whether its decision was supported by substantial evidence." Pralutsky v. Metropolitan Life Ins. Co., 435 F.3d 833, 838 (8th Cir. 2006). Substantial evidence is "more than a scintilla but less than a preponderance." Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000). The Court may not substitute its own judgment for that of the plan administrator. Alexander v. Trane Co., 453 F.3d 1027, 1031 (8th Cir. 2006). The Court must consider whether a "reasonable person could have reached a similar decision, given the evidence before him, not [whether]

---

[4] 3M's STD plan is self-insured, which means that 3M's assets are used to pay benefits under the plan. (R. at 59.) 3M's LTD plan is funded through a trust fund, with 3M's assets used for any benefits the trust fund cannot cover. (R. at 29.) 3M's Vice President of Global Compensation is the plan administrator, but under the terms of the plan the administrator has delegated "full and final discretionary power and authority with respect to benefit determinations to" Sedgwick. (R. at 57.)

a reasonable person would have reached that decision." Prezioso v. Prudential Ins. Co. of Am., 748 F.3d 797, 805 (8th Cir. 2014) (quotations omitted) (emphases in original).

Schultz contends that Sedgwick abused its discretion in denying her STD claim. She asserts that she sufficiently demonstrated her disability by objective medical evidence and that it was erroneous for Sedgwick to rely on the opinions of independent reviewers over the opinions of Schultz's treating physicians and therapists. She also contends that the independent reviewers' opinions were in themselves insufficient to support Sedgwick's determination because they failed to address the interplay, or co-morbidity, of Schultz's various diagnoses.

As stated above, the inquiry is whether Schultz was continuously disabled after June 10, 2014, as the STD plan requires. (See R. at 41 (discussing "ongoing eligibility" and "continuing proof of [] disability").) Her medical records for periods long after June 2014 thus cannot be used in support of her claims here, unless those records specifically show that her disability started before June 10 and continued to the date of the medical or psychological examination or procedure. For example, Schultz discusses the arthritis in her thumb joints, for which she eventually underwent surgery. But this arthritis was first diagnosed in 2013 and she continued to work after that diagnosis. She had surgery on her right wrist in mid-November 2014. There is no statement from any physician nor is there any other evidence that arthritis precluded Schultz from working at any time before the surgery. Thus, this evidence is not relevant to Sedgwick's June 2014 disability determination.

**A.     Objective Evidence**

Schultz's arguments focus on the plan's objective medical evidence requirement and whether Sedgwick and its reviewers misinterpreted or misapplied that requirement. She notes that the reviewers uniformly discussed her failure to provide "clinical evidence of impairment" but did not mention the plan's definition of objective medical evidence. She seems to contend that the two concepts are different and thus that the reviewers misapplied the plan in evaluating her medical records.

But the two concepts are not as different as Schultz argues.  The plan requires objective medical evidence that a claimant suffers from an illness or injury, and that the illness or injury renders the claimant unable to perform his or her job.   The second part of the definition is key to Schultz's contentions.  Sedgwick did not dispute that Schultz suffers from a variety of potentially disabling health conditions.   But Sedgwick determined, after consulting with four independent medical and psychological reviewers, that these conditions did not render Schultz disabled.  (E.g., R. at 539 (June 24, 2014, denial of benefits) (stating that "[b]ased on the medical information [in the record], there is no objective medical information <u>to support that you are unable to perform the material duties of your regular or customary occupation</u> at 3M") (emphasis added).)    Thus, the reviewers were not asked to determine whether Schultz was in fact suffering from fibromyalgia or depression or any of her other mental and physical conditions, but instead examined whether her various conditions made her unable to work.  In other words, they were quite properly searching for clinical evidence of impairment.  See <u>Boardman v.</u>

7

Prudential Ins. Co., 337 F.3d 9, 17 (1st Cir. 2003) (noting that it was proper for an insurer to require "objective evidence that these illnesses rendered her unable to work").

Similarly, to the extent that Schultz argues that a diagnosis of fibromyalgia, in particular, is not amenable to objective medical evidence, she again misses the mark. "While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." Id.  Sedgwick did not require her to provide objective medical evidence of her fibromyalgia, but of the effect that disease had on her ability to work.  (See, e.g., R. at 1428 (Dr. Lombardo's report) (noting that while medical evidence was "consistent with [Schultz's] pain complaints, there is no clinical evidence of impairments that would prevent [Schultz] from performing the documented duties of her regular and customary occupation").)  Sedgwick's focus on Schultz's impairments was appropriate and was not an abuse of discretion.

**B.     Co-Morbidity**

Schultz's treating professionals noted that her pain appeared to affect her mental functioning.  Rarely does one of her therapists or physicians mention her pain without also mentioning her accompanying mental-health issues.  Schultz contends that Sedgwick's failure to determine how her various conditions worked together to impact her daily functioning means that Sedgwick abused its discretion.  She relies primarily on the opinion in Torgeson v. Unum Life Insurance Company, 466 F. Supp. 2d 1096 (N.D. Iowa 2006), in support of her argument.

The plaintiff in Torgeson was a nurse who suffered from fibromyalgia, chronic fatigue, and depression. Id. at 1103. Her treating physicians repeatedly emphasized the interplay between the fibromyalgia and fatigue, both of which exacerbated Torgeson's depression. And one of Unum's independent reviewers noted that Unum should examine whether, even if one condition taken alone was not completely disabling, the combination of Torgeson's conditions was disabling. Id. at 1118. Unum did not undertake that inquiry, however. Id. at 1134. In determining that Unum had abused its discretion in multiple ways when denying Torgeson's application for long-term disability benefits, Judge Bennett found that the failure to consider the totality of Torgeson's conditions was, especially in light of the reviewer's recommendation, an abuse of discretion. Id.

Here, none of the reviewers spoke to the combination of Schultz's conditions as support for a possible disability determination. Schultz believes that the failure to mention this co-morbidity is itself evidence of the failure of the reviewers to discharge their duties, but the opposite is just as likely true. Each reviewer acknowledged all of Schultz's conditions, and none of them thought that the co-morbidity of her conditions was significant. And unlike in Torgeson, none of them warned Sedgwick that it should consider the issue.

In other cases finding an abuse of discretion when the plan administrator failed to take into consideration the totality of the claimant's symptoms, that failure was more pronounced than it is here. For example, the claimant in Abram v. Cargill, Inc., 395 F.3d 882 (8th Cir. 2005), suffered from post-polio syndrome, depression, and obesity. But the

9

plan administrator limited its inquiry to only whether the claimant was disabled because of post-polio syndrome. <u>Id.</u> at 886-87. And in another case, the administrator ignored completely the claimant's diagnosed fibromyalgia. <u>Godfrey v. BellSouth Telecomms., Inc.</u>, 89 F.3d 755, 759 (11th Cir. 1996). These decisions do not mean that Sedgwick's review of Schultz's conditions was an abuse of discretion.

The reviewers considered all of Schultz's conditions and still unanimously determined that she was not unable to work. Sedgwick did not fail to take into account the co-morbidity of Schultz's mental and physical conditions and thus did not abuse its discretion.

**C.      Independent Reviewers**

Schultz raises several different challenges to the independent medical reviewers who determined that she was not disabled. She contends primarily, as discussed above, that the reviewers failed to consider the co-morbidity of her conditions. She also argues that the reviewers were not specialists in her particular diagnoses, that they cherry-picked medical records to support their conclusions, and that they did not address significant conditions from which she suffers. Finally, she asserts that Sedgwick did not independently review the record to determine whether the reviewers' conclusions were supported by substantial evidence in that record.

She is simply incorrect that the reviewers' specialties were not relevant to her conditions. The three independent reviewers on her appeal were experts in rheumatology, psychiatry, and pain management. Schultz does not explain what other specialties should

have been represented. Her complaint that the reviewers cherry-picked favorable records to support their conclusions is similarly incorrect. Each reviewer extensively cataloged the relevant medical records, noting both favorable and unfavorable examinations. Nor did the reviewers fail to address her conditions. The reviewers may not have emphasized the conditions Schultz believes should have been emphasized, but this is a matter of professional opinion, not an abuse of discretion.

Her final argument is that Sedgwick abused its discretion by relying on the reviewers and not analyzing Schultz's records for itself to determine whether she had established disability under the plan. Schultz is correct that a plan administrator such as Sedgwick is "not free to accept [an independent reviewer's] report without considering whether its conclusions follow logically from the underlying medical evidence." Willcox v. Liberty Life Assurance Co. of Boston, 552 F.3d 693, 700-01 (8th Cir. 2009) (quotation omitted). But there is no abuse of discretion when "the peer reviews . . . viewed together . . . accurately represent [the claimant's] medical record and adequately address the evidence supporting her claim for disability." Midgett v. Washington Group Int'l Long Term Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009); see also Dillard's Inc. v. Liberty Life Assurance Co. of Boston, 456 F.3d 894, 899-900 (8th Cir. 2006) ("[A] plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." (citations omitted)).

Schultz contends that the record does not support the reviewers' unanimous

conclusion that she is not disabled. But Sedgwick's determination that Schultz was ineligible for benefits was reasonable in light of the evidence in the record, and does not indicate that Sedgwick impermissibly abdicated its responsibility to conduct its own review of the evidence. Schultz's motion on this point fails.

### D.     Long-Term Disability

During Schultz's appeal of the denial of STD benefits, she asked Sedgwick to also make a determination as to whether she was entitled to long-term disability benefits. Schultz denied her request for LTD benefits, finding that a condition of LTD benefits was the exhaustion of STD benefits, and because Schultz was not entitled to STD benefits, she had not exhausted them as the LTD plan required. Sedgwick also noted that Schultz's entitlement to benefits ended when she voluntarily resigned her employment. (R. at 1639.)

Schultz asks the Court to determine that she is entitled to both STD and LTD disability benefits. Because the Court concludes above that she is not entitled to STD benefits, this request is moot.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 38) is **GRANTED**; and

2. Plaintiff's Motion for Summary Judgment (Docket No. 49) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 29, 2016

                                                *s/Paul A. Magnuson*
                                                Paul A. Magnuson
                                                United States District Court Judge